**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MARIE L. BLACK, et al.,** | : | |
| **Plaintiffs,** | : | **Case No. 2:96-cv-326** |
| **v.** | : | **Judge Holschuh** |
| **COLUMBUS PUBLIC SCHOOLS,** | : | **Magistrate Judge Kemp** |
| **Defendant.** | : | |
| | : | |

<u>**Memorandum Opinion and Order**</u>

Plaintiff Marie Black brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendant Columbus Public Schools violated her rights under the First and Fourteenth Amendments to the United States Constitution.[1]  This matter is before the Court on Defendant's third motion for summary judgment.  (Doc. # 116).  Additionally, this matter is before the Court on Defendant's motions to strike several notices of supplemental authority filed by Plaintiff. (Doc. ## 132, 135).

**I.  Background**

**A.  Facts**

Plaintiff began her career with Columbus Public Schools in 1965.  From 1987 to 1992, Plaintiff served as Assistant Principal at Mifflin Alternative Middle School ("Mifflin AMS").

---

[1]Plaintiff originally asserted various other claims arising out of her employment with Defendant.  Also, Plaintiff's husband, David Black, asserted several claims related to Plaintiff's employment with Defendant.  However, as will be noted *infra*, this Court granted summary judgment to Defendant with respect to those claims and the Sixth Circuit affirmed that decision. <u>See Black v. Columbus Public Schools</u>, No. 02-3677, 2003 WL 22114027 (6th Cir. Sept. 10, 2003).

(Deposition of Marie L. Black at pp. 28, 57).  During Plaintiff's tenure as Assistant Principal,

Mifflin AMS' Principal was Stephen Tankovich.  (Id. at p. 28).  Plaintiff testified that, until

1991, Plaintiff and Tankovich had a good working relationship.  (Id. at pp. 28, 31).

Additionally, at all times relevant to this case, Plaintiff received good evaluations from

Tankovich.  (Deposition of Stephen Tankovich at p. 19.   However, Plaintiff alleges that, during

the 1990-91 school year, an affair began between Tankovich and a parent volunteer, Cynthia

Stanley, that rendered the school office a sexually charged environment and unreasonably

interfered with Plaintiff's work performance.[2]  (Black Dep. at pp. 25, 34).  The alleged affair

apparently took place on school grounds and, at least to some extent, during school hours.  (Id. at

pp. 49-50).

    With respect to the work environment, Plaintiff contends that the alleged affair was very

destructive for the school, the staff and the children.  (Black Dep. at p. 56).  In particular,

Plaintiff argues that Tankovich's behavior was "poisoning the workplace," (Id. at p. 61), and that

the staff brought concerns to her about Tankovich's conduct.  (Id. at p. 32).  Plaintiff also

contends that inappropriate conduct between Tankovich and Stanley included "[h]olding hands,

jokes, [and Stanley] sitting on Mr. Tankovich's lap."[3]  (Exhibit G, attached to Defendant's

_____

    [2]Both Tankovich and Stanley deny that they were having an affair at this time, and both
were married to other people at the time.  However, Tankovich and Stanley began dating in 1995
after Tankovich was separated from his wife and Stanley was divorced from her husband.
(Tankovich Dep. at pp. 31-32).  They  married in 1996.  (Id.).  Tankovich denies any romantic
relationship with Stanley during the time period that Plaintiff worked at Mifflin AMS.  (Id. at pp.
27, 34).

    [3]While Plaintiff argues, in her memorandum in opposition to Defendant's March 31,
1998 motion for summary judgment, that she also observed kissing and touching, she has not
offered any evidence to support this contention.

<u>March 31, 1998 Motion for Summary Judgment</u>).

Plaintiff's secretary, Pat Bryson, and another parent volunteer, Arnon Lee, also confirmed that there were rumors throughout the school regarding the alleged affair.  (<u>Deposition of Patricia Bryson</u> at pp 17-18; <u>Deposition of Arnon Lee</u> at pp. 18, 21-26).  However, neither Bryson nor Lee ever witnessed any sexual conduct between Tankovich and Stanley.  (<u>Id.</u>).  Additionally, Plaintiff contends that the alleged affair had an effect on student helpers that worked in the school office.  (<u>Black Dep.</u> at p. 50).

With respect to Plaintiff's career, Plaintiff argues that Tankovich's conduct adversely affected her job performance, created an environment which was not conducive to administering a school, and personally offended her.  (<u>Id.</u> at pp. 56, 63-64).[4]  Plaintiff asserts that Tankovich allowed the affair to consume most of his time at school and, as a result, he abdicated many of his duties, thereby leaving her to shoulder undue disciplinary responsibility.  (<u>Id.</u> at pp. 29, 50).  In addition, Plaintiff asserts that she had to field complaints from staff members regarding the

---

[4]In particular, Plaintiff testified:

> Q: So you were offended personally because of the affair that was going on between Mr. Tankovich and Ms. Stanley?
>
> A: Very definitely.  And it affected my job in such a way that I could not overcome it.
>
> Q: It offended you personally because it was against your upbringing; is that correct?
>
> A: Not necessarily mine.  There are creeds and beliefs and standards that the schools are run on.  There are standards of morale and morality and leadership and judgment, effectiveness, and quality.  It was just absolutely contrary to anything that I had been trained for or trained to believe in.  In addition to my home environment, the school environment, the district environment professes a whole other slate.  (<u>Black Dep.</u> at pp. 63-64).

affair and Tankovich's corresponding unavailability, (Id. at pp. 32, 34, 65), from Tankovich's

wife about her husband's unavailability, (Id. at p. 50), and on one occasion, had to explain to

Stanley's child why the child had to wait so long while her mother was in the principal's office.

(Id. at p. 34; Deposition of Maurice Blake at p. 33).

       Tankovich acknowledges that Stanley was in his office on various occasions, and that she

did sit on or lean against his desk because of back problems. (Tankovich Dep. at p. 27).

Tankovich also acknowledges that he occasionally closed and locked the door for privacy when

Stanley was in his office, because he "didn't want someone to have an inappropriate concept of

what was going on." (Id. at pp. 27, 50). Tankovich, however, denies that anything sexual in

nature occurred between himself and Stanley during the school day during the 1991-92 school

year. (Id. at pp. 27-28).

       In the Spring of 1991, Plaintiff reported the rumored affair, as well as its effects on

Plaintiff's job duties, to Mifflin AMS' Community of Schools Leader ("COSL") Maurice Blake.[5]

(Black Dep. at p. 32). Plaintiff and Blake discussed the alleged affair, Tankovich's

unavailability and the resulting effect on Plaintiff's disciplinary responsibilities. (Id. at p. 37;

Blake Dep. at pp. 32, 58). In response to Plaintiff's concerns, Blake investigated the matter

further and found that Plaintiff was handling an "inordinate amount" of the school's disciplinary

matters. (Blake Dep. at p. 24).

---

     [5] A COSL is an employee of the Columbus Public Schools who is responsible for
supervising building principals in a defined geographic region. Additionally, a COSL is
responsible for monitoring academic achievement levels, ensuring that the appropriate climate
exists within schools, and selecting and assigning administrators within the region. These duties
include evaluating building principals, and ensuring that the school principals follow school
policy. (Affidavit of Maurice D. Blake at ¶ 3; Blake Dep. at pp. 9-11).

Blake discussed Plaintiff's concerns with Tankovich on two occasions.  (Id. at p. 43).
During one of the meetings, Blake discussed Tankovich's unavailability and Plaintiff's
complaint that she was shouldering too much disciplinary responsibility.  (Id. at pp. 39, 44).
Blake instructed Tankovich to be sure that the time he spent with Stanley did not interfere with
his duties as Principal and recommended that Tankovich reduce the amount of time Plaintiff
spent with respect to discipline.  (Id. at pp. 24-25, 39).  Tankovich assured Blake that Stanley
would not interfere with his duties as Principal and assigned support staff to assist Plaintiff with
her disciplinary duties.  (Id. at p. 39; Tankovich Dep. at p. 18).

On another occasion, Blake met with Tankovich to discuss the alleged affair.  (Blake
Dep. at p. 44).  Blake testified that he felt obligated to speak with Tankovich about the alleged
affair because it was a "serious issue" and, if true, could have an impact on the school's "image"
and "work environment."  (Id. at pp. 49-50).  Tankovich denied having an affair with Stanley.
(Id. at p. 44).  Blake also met with Stanley to discuss the alleged affair, and she too denied the
allegation.  (Id. at p. 47).

In the spring of 1992, Plaintiff received notice that she was being transferred, effective
for the 1992-93 school year, to Yorktown Middle School ("Yorktown"), where she would serve
as the assistant principal.  (Black Dep. at p. 57; Blake Dep. at p. 55-57).  Plaintiff, however,
indicated that she was not interested in a transfer to Yorktown.  (Black Dep. at p. 59; Blake Dep.
at p. 57).  In fact, Plaintiff had previously been offered and declined two similar transfers, and
had informed Blake that she was interested in a promotion, not a lateral transfer (Black Dep. at p.
59; Blake Dep. at p. 56).  Nevertheless, Plaintiff was transferred to Yorktown.  (Blake Dep. at p.
57).

5

Plaintiff asserts that her transfer to Yorktown was a retaliatory demotion. First, Yorktown was not an alternative school, as was Mifflin AMS, and thus was considered to be less prestigious. Plaintiff also argues that her talents and background in foreign language education made her particularly well-suited to serve as assistant principal at Mifflin AMS because the school had a foreign language and international studies focus.

Second, Plaintiff argues that her transfer to Yorktown was a retaliatory demotion because of a conversation she allegedly had with Blake regarding her transfer. According to Plaintiff, Blake informed her that she would be transferred, and then said, "you've been talking to everybody about what was going on over here . . . [i]t's too bad you didn't talk loud enough" (Black Dep. at pp. 58, 64-65).

Defendant asserts that Plaintiff was transferred to Yorktown because the school had an open position for which Plaintiff was qualified, and because the position's duties would accommodate her concerns about student discipline. At a COSL meeting, Gregory Waddell, the COSL for Yorktown, announced that he needed to fill the Yorktown position with an experienced administrator who was a black female, and preferably had a "strong curriculum background." (Deposition of Gregory Waddell at p. 17). Blake recommended Plaintiff for the position because he thought the duties of the position better fit Plaintiff's needs and would help her get away from the environment at Mifflin AMS about which she was complaining.[6] (Blake Dep. at pp.56-57, 65).

After Plaintiff was informed of her transfer to Yorktown, she continued to contact school

---

[6]However, Blake informed Waddell of Plaintiff's concerns and complaints regarding Tankovich prior to Waddell's announcement of the opening and Blake's recommendation of Plaintiff for the position. (Blake Dep. at pp. 66-67).

6

officials and administrators about the environment she perceived to exist at Mifflin AMS, as well as her allegedly retaliatory transfer. In addition to Mifflin AMS COSL Blake and Yorktown COSL Waddell, Plaintiff expressed her concerns to Superintendent Larry Mixon, Deputy Superintendent Joyce Beltz, school board member William Moss, and Central Education Center employee Lou Mazzoli, in addition to many others. (Black Dep. at pp. 66-86; Blake Dep. at p. 64).

In addition to her claim that her transfer to Yorktown was retaliatory, Plaintiff also claims that she was denied promotions to two positions in Columbus Public Schools as a result of her complaints about Tankovich. (Black Dep. at pp. 105-112, 129-131; Waddell Dep. at p. 39). First, Plaintiff asserts that in August, 1994, she was denied a promotion to the position of principal at Indianola Middle School ("Indianola"). Defendant promoted Sharon Prentice, a white female, to the position. At the time Prentice was promoted, she had served as assistant principal at Indianola for four years. (Affidavit of Robert Stamps at ¶ 6).

Second, Plaintiff asserts that sometime in August, 1994, she requested the assistant principal position at Mifflin High School. (Black Dep. at pp. 105-112). Karen Zalac, a white female, was promoted to the assistant principal position at Mifflin High School due, in part, to her prior experience. (Blake Aff. at ¶ 7).

**B. Procedural History**

On March 27, 1996, Plaintiff filed her complaint in this Court and subsequently took disability retirement from Columbus Public Schools in May, 1996. (Exhibit K, attached to Defendant's March 31, 1998 Motion for Summary Judgment). The EEOC issued Plaintiff a right to sue letter on July 23, 1996, and Plaintiff filed an amended complaint on October 18, 1996.

Plaintiff originally brought suit against Defendant asserting eleven claims arising from her employment with Defendant.  Plaintiff alleged that she was subjected to a hostile work environment because of her supervisor's conduct, and that as a result of her complaints about his conduct, she suffered retaliation.  Plaintiff further alleged that she was subjected to disparate treatment based on her sex, race, and age.  Additionally, Plaintiff asserted that Defendant violated her rights under the First, Fifth, and Fourteenth Amendments to the United States Constitution, as well as her rights under Ohio law.  Plaintiff's husband, David Black, also asserted two claims under Ohio law.

On December 22, 2000, this Court granted summary judgment in favor of Defendant on all of Plaintiffs' claims except for her claim of retaliation.  (Memorandum and Order at p. 68 (December 22, 2000)).  Subsequently, Defendant filed a Supplemental Motion for Summary Judgment, arguing that the remaining claim of retaliation was barred because Plaintiff failed to file an EEOC charge within the applicable limitations period.  (Doc. # 48).  In response, Plaintiff, who was still represented by counsel, filed a Memorandum Contra, arguing that the limitations period should be equitably tolled.  (Doc. # 50).  After considering those arguments, this Court found that Plaintiff's EEOC charge was untimely, and that no grounds for equitable tolling existed.  (Memorandum and Order (May 8, 2002)).  Consequently, the Court granted Defendant's motion, and entered summary judgment for Defendant on Plaintiff's remaining retaliation claim.  (Id.).

Plaintiff, proceeding *pro se*, appealed the Court's entry of summary judgment to the Sixth Circuit Court of Appeals.  The United States Court of Appeals for the Sixth Circuit affirmed the dismissal of all Plaintiff's claims except for her claim alleging that Defendant had violated her

First Amendment right to freedom of speech.  Black v. Columbus Public Schools, No. 02-3677, 2003 WL 22114027 (6th Cir. Sept. 10, 2003).  The United States Court of Appeals for the Sixth Circuit remanded this matter for further consideration of the First Amendment claim.  (Doc. # 89).

Following remand, the Court allowed the parties to file supplemental motions for summary judgment with respect to Plaintiff's First Amendment claim.  On March 28, 2005, Defendant filed its third motion for summary judgment.  (Doc. # 116).  On June 22, 2005, the Court appointed attorney Dan Brown to represent Plaintiff.  (Doc. # 124).  Thereafter, Plaintiff filed a response to the third motion for summary judgment.  (Doc. # 127).  Defendant filed a reply, (Doc. # 130) and the motion for summary judgment is now ripe for decision.

## II.  Defendant's Third Motion for Summary Judgment

### A.  Standard

Following remand, and with the Court's permission, Defendant has filed a third motion for summary judgment with respect to Plaintiff's First Amendment claim.  Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains

for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury

if they really have issues to try." <u>Poller v. Columbia Broadcasting Sys.</u>, 368 U.S. 464, 467

(1962) (quoting <u>Sartor v. Arkansas Natural Gas Corp.</u>, 321 U.S. 620, 627 (1944)). <u>See also</u>

<u>Lansing Dairy, Inc. v. Espy</u>, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine

if there are genuine issues of fact to be tried. <u>Lashlee v. Sumner</u>, 570 F.2d 107, 111 (6th Cir.

1978). The court's duty is to determine only whether sufficient evidence has been presented to

make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the

credibility of witnesses, or determine the truth of the matter. <u>Anderson v. Liberty Lobby, Inc.</u>,

477 U.S. 242, 249 (1986); <u>Weaver v. Shadoan</u>, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing

that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter

of law. <u>Leary v. Daeschner</u>, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as

well as inferences to be drawn from the underlying facts, must be considered in the light most

favorable to the party opposing the motion. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

475 U.S. 574, 587-88 (1986); <u>Wade v. Knoxville Util. Bd.</u>, 259 F.3d 452, 460 (6th Cir. 2001).

Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to

material issues of fact, justify denial of a motion for summary judgment. <u>Adickes v. S.H. Kress</u>

<u>& Co.</u>, 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be

no <u>genuine</u> issue of <u>material</u> fact." <u>Anderson</u>, 477 U.S. at 247-48 (emphasis in original). A

10

"material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that "there is a genuine issue for trial," and  "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleading, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a
> genuine issue for trial.  If the adverse party does not so respond,
> summary judgment, if appropriate, shall be entered against the
> adverse party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material

facts." <u>Moore v. Phillip Morris Companies, Inc.</u>, 8 F.3d 335, 340 (6th Cir. 1993).  The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  <u>Anderson</u>, 477 U.S. at 251-52; <u>Lansing Dairy, Inc.</u>, 39 F.3d at 1347.

**B.  Application**

As was noted *supra*, the only claim remaining in this case is Plaintiff's claim that Defendant violated her First Amendment rights by transferring her to another school and otherwise failing to promote her in retaliation for certain comments and complaints made by Plaintiff regarding Tankovich.  As has been recognized by the Sixth Circuit, in order to state a *prima facie* case of First Amendment retaliation, a plaintiff must establish:

> (1) that she was engaged in a constitutionally protected activity;
>
> (2) that she was subjected to adverse action or deprived of some benefit;[7] and
>
> (3) that the protected speech was a substantial or motivating factor in the adverse action.

<u>See Leary</u>, 349 F.3d at 897.  If Plaintiff establishes a *prima facie* case, then the burden of persuasion shifts to Defendant who must establish, by a preponderance of the evidence, that there were other reasons for the adverse action and that the same adverse action would have

---

[7]With respect to this element, some decisions require "that the defendant's adverse action caused [the plaintiff] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity."  <u>Cockrel v. Shelby County School Dist.</u>, 270 F.3d 1036, 1048 (6th Cir.), <u>cert. denied</u>, 537 U.S. 813 (2002) (quoting <u>Leary v. Daeschner</u>, 228 F.3d 729, 737 (6th Cir. 2000)).  However, in the context of this case, as will be discussed *infra*, the inquiry is identical.  In <u>Leary</u>, the Sixth Circuit noted that an involuntary transfer from one job to another is both an adverse action and is "'likely [to] chill a person of ordinary firmness from continuing to engage in that constitutionally protected activity."  349 F.3d at 901.

resulted even if Plaintiff had not engaged in the protected activity at issue.  See Id. at 898
(citations omitted).

### 1. Constitutionally Protected Speech

Plaintiff alleges that her comments and complaints regarding Tankovich are
constitutionally protected.  In order to receive constitutional protection, a public employee must
demonstrate that: (a) the speech involved matters of public concern; and (b) the plaintiff's
interest in addressing those matters of public concern outweigh the interest of her employer in
"promoting the efficiency of the public services it performs through its employees."  Leary, 349
F.3d at 898 (quoting Pickering v. Bd. of Educ. of Township High Sch. Dist. 205, 391 U.S. 563,
568 (1968); and citing Cockrel v. Shelby County School Dist., 270 F.3d 1036, 1048 (6th Cir.),
cert. denied, 537 U.S. 813 (2002).  "Whether speech addresses a matter of public concern is a
question of law."  Banks v. Wolfe County Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003).

### a. Public Concern

Plaintiff contends that her comments and complaints regarding the alleged affair between
Tankovich, a public school principal, and a parent volunteer is a matter of public concern.
Defendant, however, argues that Plaintiff's comments and complaints were merely matters of
personal interest to Plaintiff and therefore not entitled to constitutional protection.

To determine whether speech addresses a matter of public concern, a court must consider
the "content, form, and context" of the speech, as revealed by the whole record.  Rodgers v.
Banks, 344 F.3d 587, 596 (6th Cir. 2003) (quoting Connick v. Myers, 461 U.S. 138, 147-48
(1983)). The Supreme Court has held that speech involves a matter of public concern when it
relates to "any matter of political, social, or other concern to the community."  Connick, 461

U.S. at 146.  By contrast, a public employee's speech dealing with "matters only of personal interest" is generally not afforded constitutional protection.  Banks, 330 F.3d at 893 (quoting Connick, 461 U.S. at 147).

As this Court noted in the December 22, 2000 Memorandum and Order,  "[t]he linchpin of the inquiry is . . . the extent to which the speech advances an idea transcending personal interest or opinion which impacts our social and/or political lives."  (Memorandum and Order, at p. 44 (December 22, 2000) (citing Dambrot v. Central Michigan University, 55 F.3d 1177, 1189 (6th Cir. 1995)).  "In general, speech involves matters of public concern when it involves 'issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government.'"  Banks, 330 F.3d at 893 (quoting Brandenburg v. Housing Authority of Irvine, 253 F.3d 891, 898 (6th Cir. 2001)).  Additionally, this Court notes that speech that brings to light actual or potential wrongdoing or breach of public trust on the part of government officials or a government entity is a matter of public concern.  Rodgers, 344 F.3d at 596 (quoting Connick, 461 U.S. at 148).  See also Lucas v. Monroe County, 203 F.3d 964, 973 (6th Cir. 2000); Fisher v. Wellington Exempted Village School Bd. of Educ., 223 F. Supp.2d 833, 841 (N.D. Ohio 2001).

### i.  This Court's December 22, 2000 Memorandum and Order

In concluding that Plaintiff's speech did not touch on matters of public concern, this Court had previously noted that "Plaintiff's motivation in speaking about the alleged affair is a critical element in the Court's analysis of the nature of her speech."  (Memorandum and Order, at p. 51 (December 22, 2000)).  In reaching this conclusion, this Court relied, *inter alia*, on the Sixth Circuit's decision in Dambrot as well as decisions from the Seventh Circuit Court of

14

Appeals and the District Court for the Northern District of Illinois.

In <u>Dambrot</u>, a university basketball coach was terminated after using the word "nigger" in a locker room session with players.  55 F.3d 1177.  The Sixth Circuit held that the coach's speech was not a matter of public concern because it "imparted no socially or politically relevant message to his players."  <u>Bambrot</u>, 55 F.3d at 1187.  The Sixth Circuit also noted that, "the *point* of his speech was not related to his use of the N-word but to his desire to have his players play harder."  <u>Id.</u> (emphasis original).  Therefore, the Sixth Circuit held that the coach's speech was not constitutionally protected speech.

In <u>Howard v. Bd. of Educ.</u>, 893 F. Supp. 808, 817 (N.D. Ill. 1995), the plaintiff, a band director at a public school, complained about sexually offensive comments made by teachers and students, and was allegedly subject to retaliation for her speech.  The court noted that, "the public concern element is lacking as a matter of law if the speech concerns a subject of public interest but the expression addresses only the personal effect upon the employee."  <u>Howard</u>, 893 F. Supp. at 817.   The court then concluded that the plaintiff's speech was not motivated by a desire to remedy the sexually offensive conduct for the benefit of others or the public at large.

Similarly, in <u>Cliff v. Board of School Commissioners of Indianapolis</u>, 42 F.3d 403 (7th Cir. 1994), a public school teacher brought a First Amendment retaliation claim against the school district alleging that her teaching contract was not renewed in retaliation for complaints about her class size and the "general disorder" at the school.  The court found that the plaintiff's speech did not constitute a matter of public concern because her expression addressed only the personal impact of those issues on her, and she was not speaking for other teachers at the school. <u>Cliff</u>, 42 F.3d at 411.

After reviewing the evidence, this Court held that, "[t]he overwhelming impression from the record is that Plaintiff's complaints regarding the alleged affair and its effects were motivated by Plaintiff's personal concerns, and not by a need to speak out on behalf of others." (Memorandum and Order, at p. 50 (December 22, 2000)).  This Court noted:

> First, the actual complaints had little factually to do with Tankovich's alleged behavior, and instead were focused on how his behavior affected Plaintiff's job duties, including her disciplinary responsibilities.  Second, as evidenced by Plaintiff's complaints, Plaintiff's motivation was clearly personal, and not based on a desire to alleviate a matter of public concern.

(Id.).  This Court therefore concluded that Plaintiff's speech was not entitled to receive First Amendment protection.

### ii.  The Decision of the Sixth Circuit

On appeal, the Sixth Circuit held that this Court placed too much emphasis on Plaintiff's motivation and remanded the matter for further consideration in light of Vaughn v. Lawrenceburg Power Sys., 269 F.3d 703, 716-17 (6th Cir. 2001) and Bonnell v. Lorenzo, 241 F.3d 800, 812 (6th Cir. ), cert. denied, 534 U.S. 951 (2001).  The Sixth Circuit noted that both Vaughn and Bonnell stand for the position that, while motive can be a relevant factor in determining whether speech involves a matter of public concern, the speaker's motive is not, alone, determinative.  Black, 2003 WL 22114027, * 3 (citing Vaughn, 269 F.3d at 716-17; Bonnell, 241 F.3d at 812).  Additionally, the Sixth Circuit cited the recent case of Banks, 330 F.3d at 893-94, in which the Sixth Circuit also concluded that the district court had relied too heavily on the plaintiff's motive.

### iii.  Analysis on Remand

This Court remains convinced that Plaintiff's complaints were motivated primarily by her

16

own personal interests.  "The record is replete with testimony that Plaintiff's motivation for complaining about Tankovich's behavior was personal, and focused primarily on ensuring her own career advancement."  (Memorandum and Order, at p. 51 (December 22, 2000)).  For example, Plaintiff testified, regarding the alleged affair, that "something should have been done so that it did not interfere with my career[;] [s]o that it did not interfere with what is called my career path."  (Black Dep. at p. 56).

However, there are references to Plaintiff's concerns about the effect the alleged affair was having on the students and the learning environment at Mifflin AMS.  For example, in her deposition, Plaintiff states: "I knew that it was very destructive for the school, for the staff, children.  The children had commented about it."  (Black Dep. at p. 56).  Additionally, Plaintiff testified that Tankovich's behavior was "poisoning the workplace," (Id. at p. 61), and that the staff brought concerns to her about Tankovich's conduct.  (Id. at p. 32).  Moreover, this Court explicitly recognized that "Plaintiff was the Assistant Principal and may have felt an obligation, because of her position, to bring the issue to the attention of the district administration."  (Memorandum and Order at p. 50 (December 22, 2000)).

While this Court concluded that Plaintiff's speech was motivated primarily by personal concerns, this Court did recognize the possibility that her speech was also motivated, in some respect, by her concern for the school and children.  As was recognized in Bonnel and Vaughn, when an employee "speaks from multiple motives, 'determining whether [the employee] speaks as a citizen or employee requires a precise and factually-sensitive determination.'"  Vaughn, 269 F.3d at 716 (quoting Bonnel 241 F.3d at 812).  Thus, the fact that Plaintiff's speech may have been motivated primarily by her own personal interests is not enough, alone, to support

17

Defendant's motion for summary judgment.  This Court will now re-evaluate the form, context and content of Plaintiff's speech.

With respect to the "form" and "context" of Plaintiff's speech, this Court has noted that Plaintiff's initial complaints were informal, oral complaints made to Blake, Tankovich's supervisor.  Plaintiff also complained to various other administrators.  These complaints appear to be in the form of internal grievances and not public disclosures.  However, the Sixth Circuit has recognized that speech need not be communicated to the public in order to be considered a matter of public concern.  Charvat v. Eastern Ohio Regional Wastewater Auth., 246 F.3d 607, 617 (6th Cir. 2001).  See also Taylor v. Keith, 338 F.3d 639, 643 (6th Cir. 2003) (recognizing that it was not necessary for the plaintiffs to have spoken to the press or to the general public); Chappel v. Montgomery County Fire Protection Dist. No. 1, 131 F.3d 564, 579 (6th Cir. 1997) ("Constitutional protection for speech on matters of public concern is not premised on the communication of that speech to the public").

As the Court also noted, the mere fact that the speech took place in a public school does not make it, *per se*, a matter of public concern.  However, the fact that Plaintiff engaged in the speech at issue while in the course of her employment does not preclude a finding that the speech touches upon a matter of public concern.  See Rodgers, 344 F.3d at 598-99; Cockrel, 270 F.3d at 1052.  This Court concludes that the forum for Plaintiff's speech and the context in which it was made neither weighs strongly in favor of, nor strongly against, a finding that the speech involved matters of public concern.

The content of Plaintiff's speech also plays an important role in determining whether the speech is a matter of public concern.  Certainly, portions of Plaintiff's speech addressed matters

18

of private concern.  For instance, Plaintiff spoke of her responsibilities as an administrator and

her "career path."  Plaintiff does not contend that her "career path" was a matter of public

concern.  Additionally, a general complaint regarding the internal operation or efficiency of a

school would not appear to be a matter of public concern.  See Chappel, 131 F.3d at 576 ("[t]he

mere fact that ... government efficiency [is] related to the subject of a public employee's speech

do[es] not, by [itself], qualify that speech as being addressed to a matter of public concern").

However, Plaintiff also alleged that Tankovich, Mifflin AMS' Principal, was engaged in

an extra-marital affair on school grounds and during school hours.  As this Court acknowledged,

Plaintiff was the Assistant Principal and may have felt an obligation, because of her position, to

bring the issue to the attention of the district administration.  Moreover, as was noted *supra*,

Plaintiff testified that the alleged affair was having an effect on the students and staff at Mifflin

AMS.

Additionally, Blake testified that the alleged affair was a serious allegation and, if true,

could affect the image of the school, and the work and environment in the school.  (Blake Dep. at

pp. 49-51).  Moreover, Blake indicated that he believed that Plaintiff's main point was that the

alleged affair was affecting the school.  (Id. at p. 51).  Patricia Bryson also testified that the

alleged affair was affecting teachers, office staff, and even the children.  (Bryson Dep. at pp. 34-

40).

As the Sixth Circuit has recognized, official misconduct or wrongdoing is a topic of

public concern.  See Rodgers, 344 F.3d at 596 (quoting Connick, 461 U.S. at 148).  See also

Lucas, 203 F.3d at 973; Fisher, 223 F. Supp.2d at 841.  Thus, Plaintiff's allegation that the

Principal of Mifflin AMS was engaged in an extra marital affair on school grounds and during

school hours – conduct affecting not only the operation of the school, the teaching staff, the

office staff and the children, but also the image of the school in the community – appears to be a

topic of "political, social, or other concern to the community."  See Matthews v. High Island

Independent School Dist., 991 F. Supp. 840, 846 (S.D. Tex. 1998) ("reporting misconduct of a

principal, especially ... sexual misconduct in the presence of children ... constitutes a 'matter of

public concern' worthy of First Amendment protection").  This Court therefore agrees that the

content of Plaintiff's speech involves, at least in part, a matter of public concern.

Following this Court's December 22, 2000 Memorandum and Order, the Sixth Circuit

clarified that "even if a public employee were acting out of a private motive with no intent to air

her speech publicly ..., so long as the speech relates to matters of 'political, social, or other

concern to the community,' as opposed to matters 'only of personal interest,' it shall be

considered as touching upon matters of public concern."  Cockrel, 270 F.3d at 1052 (citing

Connick, 461 U.S. at 146-49).  Moreover, in Farhat v. Jopke, 370 F.3d 580 (6th Cir. 2004), the

court, addressing the motive issue, noted that, the pertinent question is not *why* the employee

spoke, but *what* he said...."  370 F.3d at 591 (emphasis original).  Therefore, even though this

Court remains convinced that Plaintiff's motive was largely personal, because the content of her

speech contained some matters of public interest, this Court must conclude that Plaintiff's speech

was a matter of public concern.

### b.  Plaintiff's Interest

In order for Plaintiff's speech to be constitutionally protected, Plaintiff must also

20

demonstrate that her interest in addressing matters of public concern outweighs the interest of her employer in "promoting the efficiency of the public services it performs through its employees." Leary, 349 F.3d at 898 (quoting Pickering, 391 U.S. at 568; and citing Cockrel, 270 F.3d at 1048).  When balancing the two interests, a court should "'consider whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees.'" Leary, 349 F.3d at 900 (quoting Pickering, 391 U.S. at 568).

While Plaintiff may have been motivated, to a substantial degree, to report the alleged misconduct due to its impact on her job responsibilities, Plaintiff also testified that the alleged misconduct had an effect on other teachers, staff members and children.  Defendant has not produced any evidence to suggest that Plaintiff's speech in any way adversely affected the interests of her employer as described in Leary.

### 2. Adverse Action

In order to establish a *prima facie* case of First Amendment retaliation, Plaintiff must also demonstrate that Defendant took an adverse action against her.[8]  Plaintiff contends that Defendant took an adverse action against her by transferring her to Yorktown and by failing to promote her on two occasions.  Defendant argues that this Court has already determined that Plaintiff did not prove a legally actionable personnel decision and that, in any event, Plaintiff has

---

[8]As was noted *supra*, some courts describe this element as requiring the plaintiff to demonstrate that "the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity." Leary, 228 F.3d at 737.

in fact failed to establish this element.

Defendant is correct that this Court already addressed this element. However, contrary to Defendant's suggestion, this Court concluded that Plaintiff had established a legally actionable personnel decision. In the December 22, 2000 Memorandum and Order, this Court held:

> In this case, Plaintiff alleges that she was transferred and denied promotions in retaliation for exercising her First Amendment rights. In the context of a First Amendment retaliation claim, it is clear that both Plaintiff's 1992 transfer to Yorktown, as well as the denials of promotion which she alleges may be classified as legally actionable personnel decisions.

(Memorandum and Order, at p. 44 (December 22, 2000)). The Sixth Circuit did not vacate the Court's decision in this regard.

In any event, following this Court's December 22, 2000 Memorandum and Order, the Sixth Circuit confirmed that "[c]learly, involuntary transfer from one job to another is action that 'would likely chill a person of ordinary firmness from continuing to engage in that constitutionally protected activity.'" Leary, 349 F.3d at 901 (quoting Bloch v. Ribar, 156 F.3d 673, 679 (6th Cir. 1998)). Moreover, even an involuntary job transfer where neither grade nor salary is affected qualifies as an adverse action for purposes of the First Amendment. Id. (citing Boger v. Wayne County, 950 F.2d 316, 321 (6th Cir. 1991)). This Court therefore concludes that Plaintiff has satisfied this element of her *prima facie* case.

### 3. Substantial or Motivating Factor

Finally, in order to establish a *prima facie* case, Plaintiff must demonstrate that her protected speech was a substantial or motivating factor for the adverse action, *i.e.*, Plaintiff's

transfer to Yorktown and/or Defendant's failure to promote her.  See Leary, 349 F.3d at 901.

Plaintiff must "point to specific, nonconclusory allegations reasonably linking her speech to

employer discipline."  Rodgers, 344 F.3d at 602.  However, like a Title VII retaliation claim,

temporal proximity, alone, is not enough to establish a causal connection in a First Amendment

retaliation claim.  See Cockrel, 270 F.3d at 1055; Smith v. Campbell, 250 F.3d 1032, 1038 (6th

Cir. 2001).

Defendant contends that Plaintiff's speech was not a substantial or motivating factor in

Defendant's employment decisions.  Defendant suggests that, if the Court had believed that the

transfer and/or failure to promote was related to Plaintiff's speech, the Court would not have

previously dismissed Plaintiff's First Amendment claim.  However, in this Court's December 22,

2000 Memorandum and Order, it was specifically noted that, "[i]f the speech at issue is

determined not to be regarding a matter of public concern, the analysis ends, and no inquiry is

made into the motivation for the employer's decision."  (Memorandum and Order at p. 45

(December 22, 2000) (citing Dambrot, 55 F.3d at 1186)).  This Court then held that, "because

Plaintiff's complaints are not protected by the First Amendment ... the Court need not consider

the issues of causation or the motivation of [Defendant] in taking adverse action against

Plaintiff."  (Id. at pp. 53-54).  Thus, the causation element has yet to be decided.

### a.  Transfer

As was noted *supra*, Plaintiff contends that Defendant took adverse action against her by

transferring her to Yorktown.  Plaintiff argues that this adverse action was in response to her

comments and complaints regarding Tankovich. Defendant contends that Plaintiff's transfer to Yorktown had nothing to do with Plaintiff's speech, but was instead intended to satisfy Plaintiff's complaints about her level of disciplinary responsibilities.

In connection with Plaintiff's Title VII retaliation claim, this Court held that there was a causal relationship between Plaintiff's complaints and her transfer to Yorktown. For instance, the Court found that Plaintiff's complaints were on-going, and thus, little, if any, time elapsed between her transfer and her most recent complaints to Blake, the individual who made the decision to transfer her." (Memorandum and Order at p. 34 (December 22, 2000)). Additionally, the Court found that, in addition to temporal proximity, Blake allegedly made the statement that "you've been talking to everybody about what was going on over here ... it's too bad you didn't talk loud enough." (Black Dep. at p. 58).

The same reasoning applies with respect to Plaintiff's First Amendment claim. This Court finds that the temporal proximity between Plaintiff's complaints and her transfer to Yorktown, in light of the comments made by Blake, is sufficient to raise a genuine issue of material fact with respect to causation.

**b. Promotions**

As was noted *supra*, Plaintiff also contends that Defendant took adverse action against her by failing to promote her for two separate positions: (1) Principal for Indianola, and (2) Assistant Principal for Mifflin High School. Plaintiff argues that this adverse action was also taken in response to her comments and complaints regarding Tankovich. Defendant, however, contends that Plaintiff has failed to establish a causal connection between her speech and Defendant's failure to promote Plaintiff. Defendant has offered evidence indicating that the

24

persons ultimately selected for the positions were more qualified and/or better suited for the positions than Plaintiff.

Again, comparing Plaintiff's First Amendment claim to her Title VII retaliation claim, this Court previously noted that Plaintiff had failed to offer any evidence, other than temporal proximity, to establish a causal connection between her complaints and Defendant's failure to promote her. The same reasoning applies with respect to Plaintiff's First Amendment retaliation claim. Other than temporal proximity, Plaintiff has offered no evidence to establish a causal connection between her complaints and Defendant's failure to promote her.[9] Therefore, this Court concludes that Defendant is entitled to summary judgment with respect to this aspect of Plaintiff's First Amendment retaliation claim.

### 4. Defendant's Burden

Because Plaintiff has successfully established, for purposes of Defendant's motion for summary judgment, a *prima facie* case of First Amendment retaliation, the burden of persuasion shifts to Defendant to establish that it would have taken the same action even if Plaintiff had not engaged in protected speech. Leary, 349 F.3d at 898; Cockrel, 270 F.3d at 1056. As noted in Cockrel, Defendant's burden at this stage is substantially higher: to be entitled to summary judgment, Defendant may not simply bring forth enough evidence to allow a jury to find that it would have transferred Plaintiff regardless of her speech, because all reasonable inferences must be drawn in a light most favorable to Plaintiff. See Cockrel, 270 F.3d at 1056 (citing 11 James William Moore *et al*., Moore's Federal Practice, § 56.13[1], at 56-138 (3d ed. 2000) (stating that,

---

[9]According to Plaintiff, Blake's statement that Plaintiff had "been talking to everybody," was made in the context of her transfer to Yorktown, (Black Dep. at p. 58), and therefore is unrelated to Defendant's failure to promote Plaintiff.

if the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.")).

Defendant has not met its burden at this stage. While Defendant's position appears to be that Plaintiff was transferred to Yorktown to satisfy her request to ease disciplinary duties, as was discussed *supra*, the circumstances of that transfer, including the fact that Plaintiff did not apply for or want the transfer and Blake's comments at the time, present a genuine issue of material fact. See Cockrel, 270 F.3d at 1056 (citing Hunt v. Cromartie, 526 U.S. 541, 553 (1999) ("[s]ummary judgment in favor of the party with the burden of persuasion ... is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact"). **III. Defendant's Motion to Strike**

Plaintiff has submitted three notices of supplemental authority. (Doc. ## 131, 134, 137). Plaintiff seeks to introduce various newspaper articles in support of her opposition to Defendant's motion for summary judgment. Defendant has moved to strike those supplemental filings arguing that: (1) the articles are not relevant, (2) the articles constitute inadmissible hearsay, and (3) that, in any event, the probative value of the articles is substantially outweighed by the risk of prejudice. (Doc. ## 132, 135). This Court, however, has not relied on Plaintiff's supplemental filings in ruling on Defendant's third motion for summary judgment. Therefore, Defendant's motions to strike are moot.

**IV. Conclusion**

**WHEREUPON**, Defendant's motions to strike (Doc. ## 132, 135) are **DENIED** as

moot.  Defendant's third motion for summary judgment (Doc. # 116) is **GRANTED** in part and **DENIED** in part.  Plaintiff's claim that Defendant violated the First Amendment by failing to promote her due to protected speech is without merit and is therefore **DISMISSED**.  Plaintiff's claim that Defendant violated the First Amendment by transferring her to Yorktown due to her protected speech remains pending.

 In light of the forgoing, the following case schedule will be established:

1.      A final pretrial conference will be held on Friday March 10, 2006, at 10:00 a.m.

2.      Motions *in limine* will be due by March 13, 2006, responses by March 20, 2006, and replies by March 24, 2006.

3.      A conference prior to trial will be held on Friday March 31, 2006, at 10:00 a.m.

4.      Trial in this case will begin on Monday April 3, 3006, at 9:00 a.m.

**IT IS SO ORDERED.**

December 14, 2005                                    /s/ John D. Holschuh
                                                     John D. Holschuh, Judge
                                                     United States District Court