IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MARIE L. BLACK, et al.,** | : | |
| Plaintiffs, | : | Case No. 2:96-cv-326 |
| v. | : | **Judge Holschuh** |
| **COLUMBUS PUBLIC SCHOOLS,** | : | **Magistrate Judge Kemp** |
| Defendant. | : | |
| | : | |

### Memorandum Opinion and Order

Plaintiff Marie Black brings this action pursuant to 42 U.S.C. § 1983 alleging that Defendant Columbus Public Schools violated her rights under the First and Fourteenth Amendments to the United States Constitution.[1] This matter is before the Court on Defendant's motion for leave to file a supplemental motion for summary judgment *instanter* (Doc. # 152), as amended (Doc. # 158), and on Defendant's motion to stay the case schedule pending a decision on its motion for leave to file its supplemental motion for summary judgment *instanter*. (Doc. # 153).

---

[1] Plaintiff originally asserted various other claims arising out of her employment with Defendant. Also, Plaintiff's husband, David Black, asserted several claims related to Plaintiff's employment with Defendant. However, as will be noted *infra*, this Court granted summary judgment to Defendant with respect to those claims and the Sixth Circuit affirmed that decision. See Black v. Columbus Public Schools, No. 02-3677, 2003 WL 22114027 (6th Cir. Sept. 10, 2003).

**I. Background**

    **A. Facts**

Plaintiff began her career with Columbus Public Schools in 1965. From 1987 to 1992, Plaintiff served as Assistant Principal at Mifflin Alternative Middle School ("Mifflin AMS"). (Deposition of Marie L. Black (May 23, 1997) at pp. 28, 57). During Plaintiff's tenure as Assistant Principal, Mifflin AMS' Principal was Stephen Tankovich. (Id. at p. 28). Plaintiff alleges that, during the 1990-91 school year, an affair began between Tankovich and a parent volunteer, Cynthia Stanley, that rendered the school office a sexually charged environment and unreasonably interfered with Plaintiff's work performance.[2] (Black Dep. at pp. 25, 34). The alleged affair apparently took place on school grounds and, at least to some extent, during school hours. (Id. at pp. 49-50).

In the Spring of 1991, Plaintiff reported the rumored affair, as well as its effects on Plaintiff's job duties, to Mifflin AMS' Community of Schools Leader ("COSL") Maurice Blake.[3] (Black Dep. at p. 32). Plaintiff and Blake discussed the alleged affair, Tankovich's

---

    [2] Both Tankovich and Stanley deny that they were having an affair at this time, and both were married to other people at the time. However, Tankovich and Stanley began dating in 1995 after Tankovich was separated from his wife and Stanley was divorced from her husband. (Tankovich Dep. at pp. 31-32). They married in 1996. (Id.). Tankovich denies any romantic relationship with Stanley during the time period that Plaintiff worked at Mifflin AMS. (Id. at pp. 27, 34).

    [3] A COSL is an employee of the Columbus Public Schools who is responsible for supervising building principals in a defined geographic region. Additionally, a COSL is responsible for monitoring academic achievement levels, ensuring that the appropriate climate exists within schools, and selecting and assigning administrators within the region. These duties include evaluating building principals, and ensuring that the school principals follow school policy. (Affidavit of Maurice D. Blake at ¶ 3; Blake Dep. at pp. 9-11).

unavailability during school hours, and the resulting effect on Plaintiff's disciplinary responsibilities. (Id. at p. 37; Blake Dep. at pp. 32, 58). In response to Plaintiff's concerns, Blake investigated the matter further and found that Plaintiff was handling an "inordinate amount" of the school's disciplinary matters. (Blake Dep. at p. 24).

Blake discussed Plaintiff's concerns with Tankovich on two occasions. (Id. at p. 43). During one of the meetings, Blake discussed Tankovich's unavailability and Plaintiff's complaint that she was shouldering too much disciplinary responsibility. (Id. at pp. 39, 44). Blake instructed Tankovich to be sure that the time he spent with Stanley did not interfere with his duties as Principal and recommended that Tankovich reduce the amount of time Plaintiff spent with respect to discipline. (Id. at pp. 24-25, 39). Tankovich assured Blake that Stanley would not interfere with his duties as Principal and assigned support staff to assist Plaintiff with her disciplinary duties. (Id. at p. 39; Tankovich Dep. at p. 18).

On another occasion, Blake met with Tankovich to discuss the alleged affair. (Blake Dep. at p. 44). Blake testified that he felt obligated to speak with Tankovich about the alleged affair because it was a "serious issue" and, if true, could have an impact on the school's "image" and "work environment." (Id. at pp. 49-50). Tankovich denied having an affair with Stanley. (Id. at p. 44). Blake also met with Stanley to discuss the alleged affair, and she too denied the allegation. (Id. at p. 47).

In the spring of 1992, Plaintiff received notice that she was being transferred, effective for the 1992-93 school year, to Yorktown Middle School ("Yorktown"), where she would serve as the Assistant Principal. (Black Dep. at p. 57; Blake Dep. at p. 55-57). Plaintiff, however, indicated that she was not interested in a transfer to Yorktown. (Black Dep. at p. 59; Blake Dep.

3

at p. 57). In fact, Plaintiff had previously been offered and declined two similar transfers and had informed Blake that she was interested in a promotion, not a lateral transfer (Black Dep. at p. 59; Blake Dep. at p. 56). Nevertheless, Plaintiff was transferred to Yorktown. (Blake Dep. at p. 57).

Plaintiff asserts that her transfer to Yorktown was a retaliatory demotion. First, Yorktown was not an alternative school, as was Mifflin AMS, and thus was considered to be less prestigious. Plaintiff also argues that her talents and background in foreign language education made her particularly well-suited to serve as Assistant Principal at Mifflin AMS because the school had a foreign language and international studies focus.

Second, Plaintiff argues that her transfer to Yorktown was a retaliatory demotion because of a conversation she allegedly had with Blake regarding her transfer. According to Plaintiff, Blake informed her that she would be transferred, and then said, "you've been talking to everybody about what was going on over here . . . [i]t's too bad you didn't talk loud enough." (Black Dep. at pp. 58, 64-65).

Defendant asserts that Plaintiff was transferred to Yorktown because the school had an open position for which Plaintiff was qualified and because the position's duties would accommodate her concerns about student discipline. At a COSL meeting, Gregory Waddell, the COSL for Yorktown, announced that he needed to fill the Yorktown position with an experienced administrator who was a black female and preferably had a "strong curriculum background." (Deposition of Gregory Waddell at p. 17). Blake recommended Plaintiff for the position because he thought the duties of the position better fit Plaintiff's needs and would help

her get away from the environment at Mifflin AMS about which she was complaining.[4]  (Blake Dep. at pp.56-57, 65).

After Plaintiff was informed of her transfer to Yorktown, she continued to contact school officials and administrators about the environment she perceived to exist at Mifflin AMS, as well as her allegedly retaliatory transfer.  In addition to Mifflin AMS COSL Blake and Yorktown COSL Waddell, Plaintiff expressed her concerns to Superintendent Larry Mixon, Deputy Superintendent Joyce Beltz, school board member William Moss, and Central Education Center employee Lou Mazzoli, in addition to many others.   (Black Dep. at pp. 66-86; Blake Dep. at p. 64).

**B. Procedural History**

On March 27, 1996, Plaintiff filed her complaint in this Court and subsequently took disability retirement from Columbus Public Schools in May, 1996.  (Exhibit K, attached to Defendant's March 31, 1998 Motion for Summary Judgment).  The EEOC issued Plaintiff a right to sue letter on July 23, 1996, and Plaintiff filed an amended complaint on October 18, 1996.

Plaintiff originally brought suit against Defendant asserting eleven claims arising from her employment with Defendant.  Plaintiff alleged that she was subjected to a hostile work environment because of her supervisor's conduct, and that as a result of her complaints about his conduct she suffered retaliation.  Plaintiff further alleged that she was subjected to disparate treatment based on her sex, race, and age.  Additionally, Plaintiff asserted that Defendant violated her rights under the First, Fifth, and Fourteenth Amendments to the United States

---

[4] However, Blake informed Waddell of Plaintiff's concerns and complaints regarding Tankovich prior to Waddell's announcement of the opening and Blake's recommendation of Plaintiff for the position.  (Blake Dep. at pp. 66-67).

Constitution, as well as her rights under Ohio law.  Plaintiff's husband, David Black, also asserted two claims under Ohio law.

On December 22, 2000, this Court granted summary judgment in favor of Defendant on all claims except for Plaintiff's claim of retaliation.  (Memorandum and Order at p. 68 (December 22, 2000)).  Subsequently, this Court found that Plaintiff's EEOC charge was untimely, and that no grounds for equitable tolling existed.  (Memorandum and Order (May 8, 2002)).  Consequently, the Court granted Defendant's second motion for summary judgment.  (Id.).

Plaintiff, proceeding *pro se*, appealed the Court's entry of summary judgment to the Sixth Circuit Court of Appeals.  The United States Court of Appeals for the Sixth Circuit affirmed the dismissal of all Plaintiff's claims except for her claim alleging that Defendant had violated her First Amendment right to freedom of speech.  Black v. Columbus Public Schools, No. 02-3677, 2003 WL 22114027 (6th Cir. Sept. 10, 2003).  The United States Court of Appeals for the Sixth Circuit remanded the matter for further consideration of the First Amendment claim.  (Doc. # 89).

Following remand, the Court allowed the parties to file supplemental motions for summary judgment with respect to Plaintiff's First Amendment claim.  On March 28, 2005, Defendant filed its third motion for summary judgment.  (Doc. # 116).  On June 22, 2005, the Court, at Plaintiff's request, appointed attorney Mark Brown to represent Plaintiff.  (Doc. # 124).  Following a response by Plaintiff (Doc. # 127) and a reply by Defendant (Doc. # 103), on December 14, 2005, this Court granted in part and denied in part Defendant's third supplemental motion for summary judgment.  (Memorandum Opinion and Order (December 14, 2005)).

**II. Defendant's Motion to File Supplemental Motion for Summary Judgment *Instanter***

Defendant has filed a motion requesting leave to file a supplemental motion for summary judgment *instanter* based on the recent Supreme Court decision in Garcetti v. Ceballos, 126 S. Ct. 1951 (2006) and on the results of a supplemental deposition of Plaintiff. Additionally, Defendant now seeks to assert a statute of limitations defense with respect to Plaintiff's First Amendment claim. Plaintiff opposes Defendant's motion.

**A. Garcetti**

Defendant contends that Plaintiff's supplemental deposition testimony establishes that she reported the alleged affair between Tankovich and Stanley as part of her official job duties and, therefore, cannot form the basis of a First Amendment retaliation claim under Garcetti. Plaintiff responds that Defendant waived and/or forfeited this argument and that, in any event, the evidence does not establish that reporting the alleged affair was part of Plaintiff's official job duties.

In Garcetti, Ceballos, a deputy district attorney for the Los Angeles County District Attorney's Office, reviewed the accuracy of an affidavit attached to a search warrant. After concluding that the affidavit contained serious misrepresentations, Ceballos prepared a memorandum for his supervisors. Ceballos recommended dismissal of the case. Nevertheless, Ceballos' supervisor decided to proceed with the prosecution. During a hearing before the trial court, Ceballos was called by defense counsel regarding the warrant affidavit. Ceballos claimed that following these events, he was subjected to a series of retaliatory employment actions.

Ceballos asserted a claim of First Amendment retaliation based on the memo he produced for his supervisors and his subsequent employment actions. The Supreme Court began by noting

7

that it was part of Ceballos' official job duties to prepare the memo at issue. The Supreme Court then held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti, 126 S. Ct. at 1960.

This Court finds that Garcetti does not change the law in the Sixth Circuit. In Thomson v. Scheid, 977 F.2d 1017 (6th Cir. 1992), the Sixth Circuit Court of Appeals addressed a similar claim of First Amendment retaliation. Thomson, a county fraud investigator, investigated allegations regarding a county commissioner. Thomson claimed that, as a result of his investigation, he suffered adverse employment action. The Court of Appeals found that Thomson's investigation and conversations related thereto concerned his duties as an employee of the county and therefore were matters of internal department policy and not matters of public concern. Thomson, 977 F.2d at 1021. Additionally, the court noted that, because Thomson was acting in the course of his employment, he was not speaking out as a citizen with regard to his investigation and therefore, the conversations were not protected by the First Amendment. Id.

The Thomson case was the law in this Circuit long before Defendant filed its first motion for summary judgment. In its reply, Defendant concedes that Garcetti did not change Sixth Circuit precedent regarding First Amendment retaliation. Instead, Defendant argues that due to recent developments in the evidence, *i.e.*, Plaintiff's supplemental deposition taken on June 9, 2006, the Court should reevaluate Plaintiff's First Amendment claim. However, given the fact that Garcetti did not change the law regarding First Amendment retaliation in the Sixth Circuit, the facts are that Defendant took Plaintiff's original deposition before it filed its first motion for summary judgment and that it failed to make its new argument at that time or in any of its

8

subsequent motions for summary judgment.

In Defendant's original motion for summary judgment, the only argument made by Defendant regarding Plaintiff's First Amendment claim was the contention that her complaints involving the alleged conduct of Tankovich were complaints arising from the effect this conduct had on her own problems at work and that they were motivated by her personal beliefs and thus did not relate to matters of public concern protected by the First Amendment. Defendant did <u>not</u> contend that summary judgment should be rendered in its favor on Plaintiff's First Amendment claim because she made her complaints as part of her official job duties. Consequently, this asserted defense was <u>not</u> considered by this Court when it granted Defendant's motion for summary judgment on Plaintiff's First Amendment claim. (<u>Memorandum and Order</u> (December 22, 2000)).

Furthermore, such a defense to Plaintiff's First Amendment claim was <u>not</u> made known to the Court of Appeals. Indeed, had it been so argued, the court of appeals may well have considered it waived because it was not made in the District Court. <u>See, e.g., United States v. Universal Management Services, Inc.</u>,191 F.3d 750, 758 -59 (6th Cir. 1999) (claims not raised before the district court are considered waived).

On remand, Defendant filed its third motion for summary judgment and again made the same argument regarding Plaintiff's First Amendment claim, *i.e.*, that Plaintiff's speech dealt only with her own employment conditions and her own personal feelings. In short, the argument was simply that "this Court correctly dismissed Plaintiff's claim of a First Amendment violation." (<u>Defendant's Third Motion for Summary Judgment</u> at pp. 8-14). Defendant again did <u>not</u> argue that Plaintiff made complaints regarding Tankovich pursuant to her official job

9

duties.

In the Court's view, Defendant had ample opportunity, before filing its first motion for summary judgment in March 1998, to raise the defense to Plaintiff's First Amendment claim based on the argument it now belatedly makes almost on the eve of trial. It could have developed this new defense factually through discovery. It did not. It could have argued that under the law of the Sixth Circuit, including Thomson, summary judgment was required on Plaintiff's First Amendment claim for the reason it now belatedly asserts. It did not.

Considering the long history of this case and Defendant's attempt to now put forth a new reason for granting Defendant's proposed fourth motion for summary judgment – a defense to Plaintiff's claim that Defendant failed to make previously in this Court or in the court of appeals – the Court concludes that this belated defense has been waived or forfeited.

Even if the defense has not been waived or forfeited, there is no basis in the record to grant Defendant's motion. Defendant has not produced any objective evidence that an Assistant Principal in the school district has the official job duty of supervising, or at least reporting misconduct on the part of, the Principal.[5] Instead, Defendant cites the supplemental deposition testimony of Plaintiff in which she merely testified that she believed it was her duty to report the alleged misconduct of Tankovich.[6] (Supplemental Deposition of Marie L. Black (June 9, 2006) at pp. 7-8, attached as Exhibit B to Defendant's Motion for Leave to File Supplemental Motion for Summary Judgment *Instanter*). However, as the Supreme Court made clear in Garcetti, the

---

[5]In fact, the record reflects that, in this case, Blake had the responsibility of supervising Principal Tankovich. (Affidavit of Maurice D. Blake at ¶ 3; Blake Dep. at pp. 9-11).

[6]Certainly, any employee may feel obligated, morally and/or professionally, to report misconduct by a supervisor.

10

proper focus is on the employee's <u>official</u> job duties, not necessarily on the employee's motivations– whether based on perceived job duties or personal gratification. <u>Garcetti</u>, 126 S. Ct. at 1960-61.

Under these circumstances, the Court concludes that Defendant has foregone extensive opportunities to raise the "official duty" defense and that the failure to raise the defense results in a waiver, <u>see Universal Management</u>,191 F.3d at 758 -59, or forfeiture. <u>See Patterson v. Balsamico</u>, 440 F.3d 104, 112 (2nd Cir. 2006) (finding that a failure to make a timely assertion of a right results in a forfeiture of that right). Furthermore, this Court also concludes that Defendant's reliance on <u>Garcetti</u> and Plaintiff's supplemental deposition testimony does not support its motion to file supplemental motion for summary judgment *instanter* even if the belated defense has not been waived or forfeited.

**B. Statute of Limitations**

In an amendment to its motion for leave to file a supplemental motion for summary judgment *instanter*, Defendant argues that Plaintiff's First Amendment retaliation claim is barred by the relevant two-year statute of limitations. Plaintiff contends that Defendant has waived and/or forfeited such a defense.

Waiver is the intentional relinquishment or abandonment of a known right. <u>United States v. Stines</u>, 313 F.3d 912, 917 (6th Cir. 2002) (quoting <u>United States v. Olano</u>, 507 U.S. 725, 733 (1993)). <u>See also Patterson</u>, 440 F.3d at 112. In this case, Defendant raised, generally, the statute of limitations defense in its Answer. Therefore, this Court cannot conclude that Defendant waived the statute of limitations defense. <u>See Patterson</u>, 440 F.3d at 112.

Forfeiture, on the other hand, is the failure to make a timely assertion of a right. <u>Stines</u>,

11

313 F.3d at 917 (quoting Olano, 507 U.S. at 733). See also Patterson, 440 F.3d at 112. As the Supreme Court has explained, a non-jurisdictional rule can be forfeited if the party asserting the rule waits too long to raise the point. Kontric v. Ryan 540 U.S. 443, 456 (2004) (discussing forfeiture in the context of a bankruptcy rule). A statute of limitations defense is not jurisdictional, but is instead an affirmative defense that generally must be plead by the party seeking its application. Fed. R. Civ. P. 8(c). See also Old Line Life Ins. Co. of America v. Garcia, 418 F.3d 546, 550 (6th Cir. 2005). This Court therefore concludes that a statute of limitations defense, although generally raised in a responsive pleading, can nevertheless be forfeited if a party waits too long to address that defense. See Patterson, 440 F.3d at 112.

In Patterson, the defendant asserted a statute of limitations defense in both its answer and in a motion for summary judgment. The district court, however, dismissed on other grounds and did not discuss the statute of limitations. The court of appeals vacated the dismissal and remanded the case. Following remand, the case proceeded to trial. The statute of limitations defense was not asserted before the district court on remand. Following trial, the defendant once again appealed. On appeal, the defendant sought to assert a statute of limitations defense. The court of appeals held that, "[d]ue to the extensive opportunities to litigate the statute of limitations issue that were foregone, we conclude that [the defendant] abandoned this defense...." Patterson, 440 F.3d at 112.

Defendant argues that Patterson is distinguishable, procedurally, because this case has not proceeded to a jury trial on the merits. Although Defendant is correct with respect to the procedural posture of this case, this Court nevertheless finds the reasoning of Patterson to be persuasive. Defendant has failed to take advantage of "extensive opportunities" to litigate its

statute of limitations defense. Specifically, unlike the defendant in Patterson, Defendant failed to assert a statute of limitations defense with respect to Plaintiff's First Amendment retaliation claim in its initial motion for summary judgment.

Defendant explains that Plaintiff's Amended Complaint did not set forth a date as to the alleged retaliatory transfer. However, when it filed its Answer, Defendant certified to the Court that its statute of limitations defense had "evidentiary support or, ...likely to have evidentiary support after a reasonable opportunity for further investigation or discovery...." See Fed. R. Civ. P. 11(b). Defendant does not explain why it failed to engage in discovery, prior to filing its first motion for summary judgment, to determine the factual basis for the assertion of its statute of limitations defense.

Nor does Defendant provide a persuasive reason for not addressing the issue in its March 28, 2005 supplemental motion for summary judgment following remand.[7] This Court therefore concludes that Defendant has forfeited or abandoned its statute of limitations defense in connection with Plaintiff's First Amendment retaliation claim.

**III. Motion to Stay**

Defendant has also moved this Court to stay discovery pending resolution of its motion for leave to file a supplemental motion for summary judgment *instanter*. As was discussed *supra*, this Court will not permit Defendant to file a supplemental motion for summary judgment *instanter*. Therefore, Defendant's motion to stay discovery is moot.

---

[7]Defendant argues that it did not address the statute of limitations defense in its March 28, 2005 motion for summary judgment because, "the focus on remand was as to Plaintiff's motivation regarding her alleged free speech actions."

13

**WHEREUPON**, Defendant's motion for leave to file a supplemental motion for summary judgment *instanter* (Doc. # 152), as amended (Doc. # 158) is **DENIED**.  Further, Defendant's motion to stay discovery pending a decision on it motion for leave to file its supplemental motion for summary judgment *instanter*, (Doc. # 153), is **DENIED** as moot.

**IT IS SO ORDERED.**

<u>August 17, 2006</u>  <u>/s/ John D. Holschuh     </u>
John D. Holschuh, Judge
United States District Court